Thomas W. BEANE and John J. Ditewig,
Plaintiffs-Appellants,

v.

CITY OF STURGEON BAY, Defendant-Respondent.

Supreme Court

*No. 82–1325. Argued March 29, 1983.—Decided June 1, 1983.*

(Also reported in 334 N.W.2d 235.)

For the appellants there were briefs by *Albert H. Beaver,* Sturgeon Bay, and oral argument by *Suzanne Havens,* Sturgeon Bay.

For the respondent there was a brief by *Chester C. Stauffacher,* city attorney, Sturgeon Bay, and oral argument by *Mr. Stauffacher.*

Amicus brief was filed by *Richard V. Graylow* and *Lawton & Cates,* Madison, for District Council No. 40, AFSCME, AFL–CIO.

Amicus brief was filed by *Burt P. Natkins,* legal counsel, Madison, for the League of Wisconsin Municipalities.

STEINMETZ, J.   The issue presented is whether as a matter of law the City of Sturgeon Bay complied with its statutory responsibility under sec. 895.46(1)(a), Stats.,[1] to provide legal counsel to defend plaintiffs-police

---

[1] Sec. 895.46(1)(a), Stats., provides:

"895.46   **State and political subdivisions thereof to pay judgments taken against officers.**   (1)(a) If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of

officers when they were sued civilly in federal court. A second issue is whether equitable estoppel is available to the plaintiffs under the circumstances of this case.

On January 14, 1982, plaintiffs filed a four-count amended complaint against defendant-City of Sturgeon Bay seeking indemnification for legal expenses incurred in the defense of a civil rights action. In the amended complaint, the first count set forth a theory of recovery labeled statutory duty alleging defendant's obligation to pay the legal expenses pursuant to sec. 895.46(1)(a), Stats. The other counts were of public policy, unjust enrichment and implied contract. The trial court granted the city's motion for summary judgment dismissing the plaintiffs' cause of action to recover the attorney fees.

which the defendant is an officer or employe. Agents of any department of the state shall be covered by this section while acting within the scope of their agency. Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment. If the employing state agency or the attorney general denies that the state officer, employe or agent was doing any act growing out of or committed in the course of the discharge of his or her duties, the attorney general may appear on behalf of the state to contest that issue without waiving the state's sovereign immunity to suit. Failure by the officer or employe to give notice to his or her department head of an action or special proceeding commenced against the defendant officer or employe as soon as reasonably possible is a bar to recovery by the officer or employe from the state or political subdivision of reasonable attorney fees and costs of defending the action. The attorney fees and expenses shall not be recoverable if the state or political subdivision offers the officer or employe legal counsel and the offer is refused by the defendant officer or employe. If the officer, employe or agent of the state refuses to cooperate in the defense of the litigation, the officer, employe or agent is not eligible for any indemnification or for the provision of legal counsel by the governmental unit under this section."

On October 3, 1979, the plaintiffs, while on duty as police officers and employees of the City of Sturgeon Bay Police Department, arrested Robert Vogel. One month later, Vogel commenced an action in the United States District Court for the Eastern District of Wisconsin against the plaintiffs, John J. Ditewig and Thomas W. Beane, individually and in their official capacity, for their actions arising out of the arrest. He sought monetary damages in the amount of $1 million alleging assault, battery, false arrest, conspiracy and violations of civil rights.

Four days after being served with Vogel's complaint, the plaintiffs gave notice to their department head, Howard A. Larson, Chief of Sturgeon Bay Police Department, of the commencement of the action. Shortly thereafter, the officers met with the city's mayor, Dan Nielson, and its city attorney, Sven Kirkegaard, and requested that the city provide legal counsel to represent them. At the meeting, the city attorney informed the plaintiffs that the defense of the above action would be tendered to the city's insurer, Employers of Wausau. He further told them that the insurer might provide legal representation for those causes of action covered by the defendant's insurance policy. Regarding the causes of action not covered by the policy, he informed them that neither the insurer nor the city would provide legal representation. The city attorney also explained to the plaintiffs that for the causes of action covered by insurance, the plaintiffs would be personally liable for the amounts deductible in the policy and for the amount of any judgment recovered in excess of the policy limit. Furthermore, the city attorney informed the plaintiffs that if it was determined in the above action that they had acted outside the scope of their employment as police officers, the insurer would not provide indemnification for any judgment amount. Finally, the city attorney told the plaintiffs that the allegations of the federal action were so serious that the city might have to

take a position adverse to the plaintiffs. For all of these reasons, the city attorney advised the police officers to retain private counsel.

In reliance on the representations of the city attorney, the plaintiffs retained Attorney Albert H. Beaver of Sturgeon Bay to represent them and notified the city that they had done so. The city then tendered the defense of the Vogel action to its insurer which in turn retained Attorney Rodney Charnholm to represent the two officers.

On March 13, 1980, all of Vogel's claims against the plaintiffs in federal court were dismissed, except the claim of violation of constitutional rights. That claim went to trial and both Attorneys Beaver and Charnholm defended the plaintiffs through the conclusion of a jury trial. On August 6, 1981, a verdict of not guilty was returned and a judgment dismissing the action was entered.

The record demonstrates that the attorneys cooperated with each other and coordinated the defense together. Charnholm's deposition shows that both his firm and Beaver's firm appeared as counsel of record and collaborated while preparing for trial and during the trial itself. However, the record offers no details concerning how the attorneys coordinated their efforts.

After the trial's conclusion, Attorney Beaver asked the city to pay him a total of $50,000 for representing the plaintiffs pursuant to sec. 895.46(1)(a), Stats. The city refused to pay claiming that it was under no obligation to indemnify the plaintiffs, since the plaintiffs did in fact receive legal counsel from the city through the services of Attorney Charnholm.

The trial court found there were no issues of fact "with respect to whether or not the City had provided legal counsel to the defendant employes within the meaning of Sec. 895.46(1), W.S." In arriving at the conclusion concerning the application of sec. 895.46(1), Stats., the trial court held:

"The court is of the opinion that under this circumstance, the City should be willing to pay for the cost of additional counsel. Unfortunately, the statute imposes an obligation on the city to pay reasonable attorney fees and costs only if it does not provide legal counsel to the defendant officers.

"It is undisputed that the City did furnish and provide legal counsel to the plaintiff officers."

The plaintiffs appealed and we accepted this case on a petition to bypass.

Sec. 895.46(1), Stats., was initially created by Laws of 1943, ch. 377, to require the state or political subdivision to pay judgments as to damages and costs against public officials acting in an official capacity and in good faith. Since then, the statute has been amended numerous times. Ch. 603 of the Laws of 1965 amended the statute to provide for payment of attorney fees and costs of defense in addition to judgments. In 1975, the statute was amended by ch. 81 of the Laws of 1975 to provide that the state or political subdivision shall pay judgments "in excess of any insurance applicable to such officer or employe." Additional changes in the statute, which have occurred over the past 40 years, have consistently demonstrated a "legislative intention to broaden the protection afforded a public officer or employee." *Schroeder v. Schoessow,* 108 Wis. 2d 49, 66, 321 N.W.2d 131 (1982).

Under sec. 895.46(1), Stats., for a political subdivision to be liable for attorney fees and costs, it must first be determined whether that subdivision would have been absolutely liable had a judgment been rendered against the public employee. Absolute liability is imposed on the public employer if the employee is proceeded against in his or her official capacity or as an individual because of acts committed while carrying out his or her duties and the employee is found to have acted within the scope of employment. *Thuermer v. Village of Mishicot,* 95 Wis. 2d 267, 271–73, 290 N.W.2d 689 (1980). In many in-

stances, the determinative issue in attorney fees litigation is whether the employee was acting within the scope of employment.[2]

When a public officer or employee is proceeded against in a civil action, the employing governmental unit has two options regarding the provision of legal representation under the statute. First, the public employer may provide counsel itself. This option recognizes that the governmental unit should have the opportunity to supply counsel where an adverse result would involve the payment of a judgment out of public funds. *Bablitch & Bablitch v. Lincoln County,* 82 Wis. 2d 574, 581, 263 N.W.2d 218 (1978). Under this alternative the indemnification requirement does not come into play and the political subdivision pays for counsel regardless of whether the employee is ultimately found to have acted within the scope of employment.

The second option is for the governmental unit to refuse to provide legal counsel. Under this alternative, the public employer must then reimburse the employee for legal fees regardless of the outcome of the litigation, *unless* a finder of fact decides that the employee was not acting within the scope of employment. A public employer may choose this option if it believes that the employee may have been acting outside the scope of employment.

This court is concerned about the potential problems that could arise when the governmental unit makes its decision regarding legal representation. An employer

[2] *See e.g. Schroeder v. Schoessow,* 108 Wis. 2d 49, 321 N.W.2d 131 (1982). In *Schroeder,* aldermen sought indemnification against a city for attorney fees incurred in contesting a contempt order for failing to comply with a peremptory writ of mandamus. We remanded to the trial court to make a factual finding regarding whether such action is within the scope of employment of aldermen.

may base its decision whether to provide counsel on its assessment of whether the employee was acting within the scope of employment. It appears reasonable that when the employer believes that the employee was not acting within the scope of employment, representation will not likely be provided, since an adverse judgment combined with a finding that the employee acted outside the scope of employment, would not involve the payment of a judgment out of public funds. It is also reasonable that when the employer believes that the employee was acting within the scope of employment, counsel will be provided. The dilemma facing the governmental unit is that at the time the decision to provide counsel or not is made, the employer does not know whether the employee will later be found to have acted within the scope of employment.

If a political subdivision decides to provide counsel, the employer and the employee will be united in interest by taking the position that the employee was acting within the scope of employment and that there should be no personal liability for his or her actions. However, once the public employer takes the position that the employee was acting outside the scope of employment, the employer if it provides counsel, must provide separate counsel for the employee. Otherwise, there would be an obvious conflict of interest present, since the employer would seek a finding that the employee was acting outside the scope of employment, thereby escaping liability, while the employee would desire a contrary finding in order to avoid personal liability.

In this case the city, at the most, offered to provide partial representation through its insurance carrier and, apparently, advised the officers to also obtain their own counsel. From the record, it appears that the city's decision to provide only partial representation was based on the extent of the city's insurance coverage and the recog-

nition of the potential conflict of interest should the city decide later in the proceedings to take the position that the officers were acting outside the scope of their employment. We note that the city's decision to provide partial representation because of its limited insurance coverage was based on an erroneous perception of sec. 895.46 (1), Stats. The extent of a city's insurance coverage is an irrelevant factor when deciding to provide counsel. This is because a governmental unit's liability for its employees' actions is dependent only on findings of liability and whether the employees were acting within the scope of their employment. Whether or not the city was insured for certain claims in this case is irrelevant, since the city still would have been liable for judgments not covered by insurance, if it were found that the officers were acting within the scope of their employment.

The problem in this case is that the city, believing a potential conflict of interest existed, advised the officers to obtain their own counsel, but then allegedly proceeded to provide the officers with complete representation through its insurance carrier. The issue then becomes who should have to pay for the attorney fees of the officers' personal counsel under these circumstances.

We understand the plaintiffs-police officers contending that summary judgment was inappropriate regarding two essential issues. First, the plaintiffs maintain that they were not provided "legal representation" as the term is meant to be understood in sec. 895.46(1), Stats. Second, they allege alternatively that the city should be held liable under the facts presented by the doctrine of equitable estoppel.

As to the statutory obligation, it appears the trial court based its conclusion that the plaintiffs were provided with "legal representation" as required by sec. 895.46(1), Stats., on two affidavits. The affidavit of Attorney Charnholm stated that his representation was "totally

complete and totally comprehensive as to all legal issues involved in said lawsuit" and was not limited or curtailed by any reservation of rights by the city's insurer. The affidavit of Thomas E. Ackerman, the claims supervisor of the insurer, stated that the defense of the plaintiffs was "intended to be complete legal counsel and defense on all issues" and that policy reservations applied only to the payment of certain damage awards.

The record, however, contains additional materials that show competing facts and inferences regarding whether the plaintiffs received complete legal representation. In a letter dated March 21, 1980, which Ackerman sent to each of the plaintiffs, they were advised:

"The complaint in part alleges assault, false arrest, conspiracy, and violation of constitutional rights.

"Assault is not covered under the primary policy as the primary policy is based on an occurrence. Assault is covered under the Umbrella Policy, but would be subject to a retention of that policy of $10,000. This means that should an award be made under the assault portion of the complaint, the retention limit as described above would act as a deductible.

"There is no coverage for the claim of conspiracy or violation of constitutional rights under either policy.

"You become an insured under the policy so long as you are acting within the scope of your employment. If facts would determine that you were acting outside of your employment, you would not be covered under the policy."

A possible, reasonable inference from the letter is that the intent of the insurer was to defend only those claims covered by the policy.

On January 16, 1981, Ackerman directed another letter, this one to Attorney Beaver. It stated in part:

"Count 1 of the Civil Complaint includes the claim for damages under the above Statute. That count may also include deprivation of constitutional rights and conspira-

cies which are not covered under the insurance policy. It would seem, therefore, that the letter of March 21 [1980] still has application. We continue to provide both officers with a defense under the civil lawsuit, *subject to these reservations,* through the firm of Everson, Whitney, Everson, Brehm, and Pfankuch. *Your office represents the individual officers in the civil matter for their uninsured exposure.*" (Emphasis added.)

This letter also implies that the defense of the plaintiffs by the insurer was not to be a complete one. Moreover, both letters of Ackerman are consistent with the statements made by the city attorney at the meeting with the plaintiffs shortly after the Vogel suit was filed when he advised the plaintiffs to retain private counsel. In sum, these letters reveal an issue of material fact which should not have been resolved by the trial court on a motion for summary judgment.

The city argues that sec. 895.46(1), Stats., does not require the provision of legal counsel "on all issues," and that the defense provided was sufficient to meet its statutory obligation. Such an interpretation of sec. 895.46(1) is incorrect. Once a governmental unit decides to provide counsel, it must provide complete and full representation on all issues. If only partial representation is provided, the public employer is then liable for the reasonable attorney fees expended by the plaintiffs for personal representation, assuming, of course, that the employee is found to have acted within the scope of employment. If partial legal representation satisfied the statutory obligation, public employees would then have to assume a portion of the burden of attorney fees. Such a result is inconsistent with the statute's goal of providing the broadest possible protection to public employees.

The city also contends that the successful result obtained in the federal court action conclusively demon-

strates that its obligation under the statute was satisfied. Such reasoning is backwards because the officers could not know at the time the action was commenced that they would eventually be found not liable and would not need their own attorney to protect their interests.

Should the lower court find that the city did provide complete legal representation, the plaintiffs still may be able to recover. The record as presented to us reveals that the trial court's motion for summary judgment on the claim of equitable estoppel was improperly granted.

The doctrine of equitable estoppel as applied against nongovernmental units was described in *Kohlenberg v. American Plumbing Supply Co.*, 82 Wis. 2d 384, 396, 263 N.W.2d 496 (1978). We stated:

"The defense of equitable estoppel consists of action or nonaction which, on the part of one against whom estoppel is asserted, induces reliance thereon by the other, either in action or nonaction, which is to his detriment. *Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc.*, 71 Wis. 2d 143, 153, 238 N.W.2d 69 (1976). It is elementary, however, that the reliance on the words or conduct of the other must be reasonable *(Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc., supra* at 154) and justifiable *(Matter of Alexander's Estate,* 75 Wis. 2d 168, 183–84, 248 N.W.2d 475 (1977))."

We recognize that as a general proposition a governmental unit is not subject to estoppel to the same extent as a private party. *Ryan v. Department of Revenue,* 68 Wis. 2d 467, 470, 228 N.W.2d 357 (1975). It is, though, "available as a defense against the government if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel." *Department of Revenue v. Moebius Printing Co.*, 89 Wis. 2d 610, 638, 279 N.W.2d 213 (1979). "In each case the court must balance the

injustice that might be caused if the estoppel doctrine is not applied against the public interests at stake if the doctrine is applied." *Id.* at 639.

The only reference in the trial court's decision to estoppel is as follows: "I recognize that the complaint also makes reference to other areas of liability. One I believe is based upon estoppel. The others are that of unjust enrichment and implied contract. I don't know whether any of those are sound." A balancing test should have been conducted by the trial court before granting the motion for summary judgment.

The record already contains facts that are consistent with an estoppel claim. The plaintiffs were advised by the city attorney to hire their own counsel. The insurance claim supervisor's advice about policy coverage also creates the inference that it may have been reasonable for the plaintiffs to retain their own counsel based on the policy information that was relayed to them. In addition, the plaintiffs were never informed by anyone that Attorney Charnholm's representation would be complete, nor was the city ever advised that it would be complete.

If the trier of fact finds that the representations made by the city officials caused the plaintiffs to retain private counsel, the city would then be liable for those reasonable attorney fees caused by its representations. There is no way the taint of the city's representations could disappear once the plaintiffs relied on them by hiring private counsel. The plaintiffs could not know in this case the city's changing mood of providing a defense for them. The taint of the representations continued until the favorable verdict in the federal case was received.

The evidence in this case may demonstrate that the city provided complete legal representation to the plaintiffs in their defense of the federal action which would satisfy the language and requirements of sec. 895.46 (1) (a), Stats. However, if it is proven that the city's agents

told the police officers that they needed their own private counsel due to a conflict of interest or insurance coverage problems and they relied on those representations to their financial detriment, the city would then be estopped from denying its responsibility for payment of reasonable attorney fees.

We note that in the plaintiffs' amended complaint equitable estoppel was not specifically pleaded. However, if the facts constituting estoppel appear in the complaint, estoppel need not be specifically pleaded. *Estate of Voss,* 20 Wis. 2d 238, 244, 121 N.W.2d 744 (1963). The complaint in this action is adequate since it did state that the city's agents misled the plaintiffs as to what legal representation, if any, would be provided in defense of the federal action, and that the plaintiffs relied on those representations by hiring Attorney Beaver.[3]

---

[3] Relevant portions of the amended complaint, filed January 14, 1982, read as follows:

"8. Within a few days of commencement of the above action plaintiffs met with defendant's mayor, Dan Nielson, and defendant's legal counsel, Attorney Sven Kirkegaard, and requested that the defendant provide legal counsel to represent plaintiffs in the action.

"9. At this meeting, defendant's legal counsel informed plaintiffs that the defense of the above action would be tendered to defendant's insurer, Employers of Wausau, which might provide legal representation as to certain of the causes of action covered by defendant's insurance policy, but that as to causes of action not covered by the policy, the insurance carrier would not provide legal representation, the defendant would not directly provide legal representation, and that plaintiffs would have to hire private counsel to defend against these causes of action.

"10. At this meeting, defendant's legal counsel informed plaintiffs that as to the causes of action which were covered by insurance, plaintiffs would be personally liable for the amounts deductible in the policy and for the amount of any judgment recovered in excess of the policy limit and that plaintiffs would have to hire private counsel to defend against this personal liability.

In summary, the lower court improperly granted summary judgment. A trier of fact must determine whether the city discharged its statutory duty under sec. 895.46 (1), Stats., and whether the city should be estopped from contending that the duty was fulfilled.

*By the Court.*—The judgment of the circuit court is reversed and the cause is remanded for further proceedings.

"11. At this meeting, defendant's legal counsel informed plaintiffs that if it was determined in the above action that plaintiffs acted outside the scope of their employment as police officers, defendant's insurer would not provide indemnification for any judgment amount, and that plaintiffs would have to hire private counsel to defend them against this possible personal liability.

"12. At this meeting, defendant's legal counsel informed plaintiffs that the allegations of the above action were so serious that defendant might have to take a position adverse to plaintiffs and that therefore plaintiffs would have to hire private counsel to represent them.

"13. In reliance on these representations of defendant's legal counsel, plaintiffs promptly retained Attorney Albert H. Beaver of Sturgeon Bay, Wisconsin to represent them in the above action and promptly notified defendant through defendant's legal counsel and plaintiffs' department head that they had retained Attorney Beaver.

". . . .

"17. Albert H. Beaver, as attorney, defended the plaintiffs herein against the action commenced by Robert Vogel in the United States District Court through the conclusion of a jury trial on August 6, 1981, wherein a verdict of 'not guilty' was returned and a judgment dismissing the action was entered thereon."